ALBERT A. WOLL *et al.*, Plaintiffs-Appellants, v. HERMAN L. LOEB, Defendant-Appellee.

Fifth District   No. 5—87—0161

Opinion filed July 6, 1989.

L. James Hanson and Warren N. Loar IV, both of Musick & Mitchell, P.C., of Mt. Vernon, for appellants.

C. Michael Witters, of Mt. Carmel, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Plaintiffs, Albert A. Woll (Woll) and Woll Enterprises, Inc., appeal from the judgment entered in their favor by the circuit court of Clinton County on their complaint seeking money judgments and foreclosure of operator's liens against defendant, Herman L. Loeb (Loeb).

Woll and Loeb, along with others, are owners of undivided fractional working interests in various oil and gas leases. As mining partners, each is required to pay a proportional share of the operating expenses for the wells on the leases. These expenses include overhead and supervision costs and third-party charges or supply, repair and maintenance costs. At some point in the parties' relationship, Woll took over the operation of 10 separate groups of the oil and gas leases, known as the "Family Leases." Woll began charging $75 per month per well for overhead and supervision in connection with the "Family Leases." Woll subsequently increased this charge to $100 per month per well, then to $1,000 per month, and finally to $2,400 per month once Woll's son entered the business. Loeb objected to these increases, and as of July 1983, began paying only his share of the third-party charges. Some of Loeb's payments included the notation "payment in full"; others did not. Woll refused to cash any of Loeb's checks once the dispute arose between the two. Loeb eventually stopped making all payments, which in turn resulted in the instant suit. Loeb admitted to owing certain portions of the amounts sued upon, these being his share of the third-party expenses. The trial court granted plaintiffs a partial summary judg-

ment and awarded them $53,440.96. Loeb appealed, but his appeal was dismissed as premature. Following a bench trial, the court found $75 per month per producing well to be a reasonable charge for overhead and supervision costs and entered a money judgment against Loeb for an additional $95,790.42 plus court costs after granting Loeb a $5,000 credit for a previous payment. The trial court denied plaintiffs' claim for prejudgment interest.

Plaintiffs argue on appeal the trial court erred in denying prejudgment interest, in giving Loeb credit for a $5,000 payment, and in calculating the award itself.

■■ ■ With respect to the trial court's error in calculating the amount of the award, Woll raises no issue as to the method of determining the amount owed, only as to the actual amount. Woll believes the court's finding as to the number of producing wells, when plaintiffs presented the only evidence as to the number of wells operated, was against the manifest weight of the evidence. Woll contends the court failed to include two wells and reduced the operating time for an additional well, thereby reducing plaintiffs' recovery by $2,325 on this aspect alone. Woll also believes the court made a transpositional error and incorrectly reduced the operating expenses for 1983 as established by plaintiffs' exhibits by $10,000. We agree in part and disagree in part with Woll's contentions. It is quite clear the trial court inadvertently reduced the 1983 operating expenses by $10,000. The trial court expressly accepted in its order the summaries of third-party charges as listed on one of plaintiffs' exhibits for the period July 1983 through February 1985. The figure for 1983 incorporated into the court's order, $32,972.77, is exactly $10,000 less than that listed on plaintiffs' exhibit while the 1984 figure is the same on both. Loeb argues the reduced operating expense figure for 1983 incorporates credits for payments he made during the year prior to the parties' dispute. Loeb, however, cited no evidence for his claim, and we have no duty to find it for him. (See *47th & State Currency Exchange, Inc. v. B. Coleman Corp.* (1977), 56 Ill. App. 3d 229, 232, 371 N.E.2d 294, 297.) The only clear evidence in the record indicates the third-party expenses for 1983 were indeed $42,972.77. We therefore must remand the judgment to correct this error. We do not, however, agree with plaintiffs' contention that the court's finding as to the number of producing wells is against the manifest weight of the evidence. The findings of a trial court in a nonjury case are not to be disturbed on review if there is any evidence in the record to support these findings. (See *Briggs v. Gaddis* (1985), 133 Ill. App. 3d 704, 709, 479 N.E.2d 350, 353.) Plaintiffs'

testimony as to the number of operating wells often was vague and uncertain. Woll testified he rarely was on the leases himself. Woll did testify, however, that plaintiffs operated only one well on the "Schomacher Lease." The evidence further revealed one well on the "Leighty Lease" was producing only from July 1983 to December 1983. Woll later tried to refute or explain his testimony and this evidence, but it was for the trial court to resolve the matters and weigh the credibility of the parties. We choose not to interfere with the court's decision. We do note, however, the trial court did make a calculation error with respect to the "Clinton County Group" of leases, and accordingly, we remand for correction of this error also. According to the court's order, the number of producing wells and overhead and supervision expenses for the "Clinton County Group" is listed as:

| CLINTON COUNTY GROUP | 1983 (from 7/83) | 1984 | 1985 | 1986 (thru 4/86) |
|---|---|---|---|---|
| Deters: | 5 | 4 | 4 | 4 |
| McCabe: | 4 | 3 | 3 | 3 |
| Murphy: | 2 | 2 | 2 | 2 |
| Schaffley: | 1 | 1 | 1 | 1 |
| Schomacher: | 1 | 1 (for 9 mos.) | 0 | 0 |
| Total No. of Producing Wells | 13 | 11 for 9 mo. 10 for 3 mo. | 10 | 10 |
| Months operating | x 6 | x 9  x 3 | x 12 | x 4 |
| | 78 | 99 + 30 129 | .120 | 40 |
| | x $75 | x $75 | x $75 | x $75 |
| | $5,850 | $9,675 | $9,000 | $3,000 |

The error occurs in the calculations for 1984. One well on each of the "Deters" and "McCabe" leases was abandoned in February, and the well on the Schomacher lease was abandoned in September. The total number of producing wells for 1984 should have read:

| 13 for 1 mo. | (or in the reverse) | 10 for 12 mos. |
|---|---|---|
| 11 for 8 mos. | | 1 for 9 mos. |
| 10 for 3 mos. | | 2 for 1 mo. |

resulting in a total of 131 x $75 or $9,825. Completing the rest of the chart, Loeb's share of overhead and supervision for this group of leases is $6,620.92:

| | | |
|---|---|---|
| $ 5,850 | | $ 5,850 |
| 9,675 | | 9,825 |
| 9,000 | | 9,000 |
| 3,000 | | 3,000 |
| $27,525.00 | | $27,675.00 |
| (-1,191.34) | Expense billed for Cobb '83 & '84 | (-1,191.34) |
| $26,333.66 | | $26,483.66 |
| x       .25 | (Loeb's interest) | x       .25 |
| $ 6,583.42 | (Loeb's share)          (Corrected share) | $ 6,620.92 |

This in turn results in a new total of overhead and supervision expense on the "Family Leases" of $16,265.68. Adjusting all of the figures accordingly, including the $10,000 1983 third-party expense correction, the total judgment should be $105,828.14 plus court costs in favor of plaintiffs.

| Original Order | | Corrected |
|---|---|---|
| $138,003.42 | (Loeb's share of third-party expenses) | $148,003.42 |
| + 16,227.96 | (Loeb's share of overhead & supervision) | + 16,265.68 |
| - 5,000.00 | (Credit (payment 8/9/83)) | - 5,000.00 |
| - 53,440.96 | (partial summary judgment payment) | - 53,440.96 |
| $95,790.42 | plus court costs | $105,828.14 |

■ Plaintiffs contend, however, Loeb is not entitled to a credit of $5,000 toward this judgment for his payment made on August 9, 1983. Plaintiffs argue Loeb's August payment pertained to an earlier month's charges which were not included in the present controversy. While it is true that Loeb did not affirmatively plead the $5,000 payment (see *National Acceptance Co. v. Exchange National Bank* (1968), 101 Ill. App. 2d 396, 401, 243 N.E.2d 264, 266), plaintiffs' own exhibits reflect receipt of this $5,000 payment and lack of credit given. Plaintiffs' bookkeeper acknowledged she had not given Loeb credit for the $5,000 payment although she did testify on redirect the payment may have been attributable to an earlier invoice. Plaintiffs and Loeb, however, had an ongoing relationship with a constant flow of expense and income items. Whether or not Loeb was entitled to this credit of $5,000 toward the amount in controversy here became a question of fact for the trial court to determine and one which we will not disturb on review. See *Briggs*, 133 Ill. App. 3d at 709, 479 N.E.2d at 353.

Plaintiffs' final argument on appeal is that the trial court should

have awarded them prejudgment interest on the unpaid third-party charges. Plaintiffs believe Loeb's refusal to pay these undisputed amounts was unreasonable and vexatious and done solely to gain an advantage in the parties' dispute over the supervisory and overhead charges. Plaintiffs point to the fact that only 10.6% of the total amount was in dispute, yet Loeb withheld all amounts due or placed "payment in full" notations on checks drawn for undisputed amounts.

■■ ■ Whether a delay in payment is unreasonable and vexatious is a question of fact to be determined by the trial court. We sitting as a court of review will not disturb that determination unless it is contrary to the manifest weight of the evidence. (*Charles Selon & Associates, Inc. v. Estate of Aisenberg* (1981), 103 Ill. App. 3d 797, 801, 431 N.E.2d 1214, 1217.) Such is not the case here. Plaintiffs, without consulting Loeb, arbitrarily increased overhead and supervisory charges from $100 per month to $2,400 per month with little relation to the actual overhead and supervision costs incurred. Loeb rightfully objected to such charges (see *Kinne v. Duncan* (1943), 383 Ill. 110, 114-15, 48 N.E.2d 375, 377-78), thereby creating a legitimate controversy between the parties. An honest dispute as to the existence of a legal obligation will not result in an unreasonable and vexatious delay triggering recovery of prejudgment interest. (See *Emmenegger Construction Co. v. King* (1982), 103 Ill. App. 3d 423, 429, 431 N.E.2d 738, 743.) While Loeb may have placed "payment in full" notations on many of his tendered payments, plaintiffs refused to cash even those checks for undisputed third-party charges which did not contain such notations. Loeb did not refuse to pay; plaintiffs refused to accept. The trial court properly denied prejudgment interest in this instance.

For the aforementioned reasons, we affirm the judgment of the circuit court of Clinton County but remand for modification of the dollar amount in accordance with this opinion.

Affirmed in part; remanded with directions.

CHAPMAN and HOWERTON, JJ., concur.