*In re* LINDA PEASLEY, Court Reporter.
Fourth District   No. 89—MR—1

Opinion filed October 12, 1989.

No appearance for petitioner.

William B. Lawrence, of Markowitz & Lawrence, of Bloomington, for respondent.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

On July 6, 1989, the rule to show cause for criminal contempt entered against the respondent informed the respondent of 15 cases on appeal to this court from approximately October of 1988 through May of 1989, the names of the cases, the appellate court case numbers, the dates reports were due, any extensions granted, and the date the records (if any) were filed. According to the respondent, this is a correct listing of all of the transcripts which were due by the respondent during this period of time. The clerk of this court has indicated there is one other case in which the respondent was responsible for the tran-

script, in addition to these 15 cases, and that case is *County of Taze-well v. Industrial Comm'n,* 4th Dist. Gen. Nos. 4—89—0170, 4—89—0201. The court takes judicial notice of this additional case which was not listed on the rule to show cause. In none of the cases in the rule to show cause did the respondent meet the date the transcript of proceedings was due per the docketing order of this court. In the Industrial Commission case, although no docketing order was entered, the record reflects that the respondent did not prepare a timely transcript after formal request.

A preliminary hearing was held July 25, 1989, the respondent and her attorney being present before Presiding Justice, John T. McCullough. At the appellate court's request, Robert Biderman, Deputy Director, State's Attorney Appellate Prosecutor (SAAP), was present as was Kenneth Crenshaw, the Court Reporting Manager of the Administrative Office of the Illinois Courts. A court reporter was present to report the proceedings.

At the preliminary hearing, the respondent was admonished of her rights and the possible penalties that may be imposed. The respondent entered a denial of the rule, was granted leave to file motions, and a hearing on the rule was set for August 21, 1989.

On August 21, 1989, a hearing was held on the rule to show cause. The respondent, her attorney, the Deputy Director of SAAP, and Kenneth Crenshaw were present. A court reporter was present to report the proceedings.

Before we address the merits of the case we deem it appropriate to discuss, in some detail, the motions filed by respondent during the course of these proceedings and the reasons, where appropriate, for the filings made thereon.

With leave of court, respondent was allowed to file written motions on or before August 4, 1989. In addition, during the course of the August 21, 1989, hearing, a number of oral motions were presented. At that time, counsel for respondent argued the merits of all motions.

Initially, respondent filed a petition for change of venue from Presiding Justice McCullough on the theory he was "interested" within the meaning of the civil venue statute (Ill. Rev. Stat. 1987, ch. 110, par. 2—101). In support, respondent argued Judge McCullough's contacts with Judge Caisley prior to the issuance of the rule, the issuance of the rule itself, and the fact Judge McCullough presided at the preliminary hearing on July 25, 1989, constituted evidence that Justice McCullough had prejudged the case against respondent. During the course of the hearing on August 21, 1989, counsel modified his origi-

nal theory with an oral motion for change of venue under section 114—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 114—5) on the basis the criminal venue statute was more properly applicable because the nature of the charge was criminal contempt. Under either statute, respondent argued, the change should be automatic.

■■ While it may be true, as a general proposition, that civil procedure rules are generally applied to cases of civil contempt and criminal procedure rules to cases of criminal contempt (*Daniel Boone Woolen Mills & Rock Island Garment Co. v. Laedeke* (1925), 238 Ill. App. 92), contempt proceedings are neither civil nor criminal but rather *sui generis*. (*47th & State Currency Exchange, Inc. v. B. Coleman Corp.* (1977), 56 Ill. App. 3d 229, 371 N.E.2d 294; *People v. Doss* (1943), 382 Ill. 307, 46 N.E.2d 984.) Because the power of a court to punish for contempt is inherent as essential and proper to the effective functioning of the courts and to the administration of justice (*People v. Javaras* (1972), 51 Ill. 2d 296, 281 N.E.2d 670), courts are not strictly bound by the provisions of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 1—101 *et seq.*) or the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, pars. 100—1 through 126—1). (*47th & State Currency Exchange, Inc.*, 56 Ill. App. 3d at 234, 371 N.E.2d at 298.) More specifically, it has been stated the venue statute does not apply to proceedings to punish contempts unless such proceedings are expressly included in the statute. (*Doss*, 382 Ill. at 311, 46 N.E.2d at 987.) Since the court is not bound by either the code of civil or criminal procedure and the relevant venue statutes do not expressly apply to contempt proceedings, neither venue statute is applicable and a request for substitution of judge is not automatic.

■■■ Whether a change of venue should nevertheless be granted must still be considered. The general rule is that a judge is not disqualified from conducting contempt proceedings merely because the contempt was committed against himself or a court of which he was a member. (See Annot., 64 A.L.R.2d 600 (1959).) The standard to be applied is to look to the nature of the contemptible conduct to determine whether it would so inflame a judge that he could not remain impartial. If the conduct does not rise to the level of viciousness, there is no absolute prohibition forbidding the same judge against whom the contempt was directed from hearing the case. (*Mayberry v. Pennsylvania* (1971), 400 U.S. 455, 27 L. Ed. 2d 532, 91 S. Ct. 499; *People v. Jashunsky* (1972), 51 Ill. 2d 220, 282 N.E.2d 1; *In re Albert* (1970), 383 Mich. 722, 179 N.W.2d 20.) In this case, we conclude respondent has not established the conduct giving rise to the rule to show cause

is of such a nature that the members of this court, individually or collectively, could not remain impartial in considering the merits. Accordingly, respondent's motions for change of venue are denied. For the very same reasons, respondent's additional oral motion for substitution of all Fourth District judges who have any knowledge of this case is also denied.

Respondent's second written motion was to dismiss the rule to show cause on the theory the appellate court is not a proper party to initiate the rule because respondent files transcripts in the circuit court, not the appellate court. Respondent also maintains there is an alternative administrative statutory procedure which may be employed to consider this matter and, therefore, the power of contempt should not be used when other adequate remedies are available. Defendant also contends the allegation in the rule that the conduct is wilful is a conclusion unsupported by facts. Finally, respondent argues the issue is moot because all transcripts for cases covered by the rule were filed with the circuit court on or before the date of the preliminary hearing, July 25, 1989.

As to whether this court is a proper party to initiate the rule to show cause, respondent's argument is without merit. Article VI, section 6, the Constitution of Illinois (1970) provides in pertinent part: "The Appellate Court may exercise original jurisdiction when necessary to the complete determination of any case on review." (Ill. Const. 1970, art. VI, §6.) That power extends to entering such orders as may be necessary to cause a proper circuit court record to be made and filed. (See Ill. Rev. Stat. 1987, ch. 37, par. 35.) Moreover, as we have previously noted, the power of a court to punish for contempt does not depend on constitutional or legislative grant, but is inherent in all courts as essential to the proper and effective functioning of the courts and to the administration of justice. (*Javaras*, 51 Ill. 2d 296, 281 N.E.2d 670; *Stevens v. County of Lake* (1974), 24 Ill. App. 3d 51, 320 N.E.2d 263; *People v. Bloom* (1966), 35 Ill. 2d 255, 220 N.E.2d 475, *cert. granted* (1967), 386 U.S. 1003, 18 L. Ed. 2d 431, 87 S. Ct. 1346, *rev'd on other grounds* (1968), 391 U.S. 194, 20 L. Ed. 2d 522, 88 S. Ct. 1477.) Notwithstanding these principles, respondent argues the proper forum for these proceedings is the circuit court since it is the circuit court in which respondent files her transcripts. This argument is without merit. Upon the filing of a timely notice of appeal, the circuit court is divested of jurisdiction. From that moment forward, jurisdiction lies in the appellate court and it is the order of the appellate court requiring the production of transcripts and the failure to comply with that order which establishes the basis for the offend-

ing conduct which is the subject of the rule. Since it is the order of this court which is being violated, this court is a proper party to initiate these proceedings.

■ Respondent's alternative argument, that contempt proceedings should not be employed when alternative administrative procedures have been established to review the propriety of the conduct involved, is also without merit. Although we have taken under advisement respondent's request that these matters be referred to the appropriate administrative authority under the Illinois Certified Shorthand Reporters Act of 1984 (Reporters Act) (Ill. Rev. Stat. 1987, ch. 111, par. 6201 *et seq.*), a matter which will be discussed more fully below, we reject respondent's initial contention the court is without power to act in the face of these alternative procedures.

While it is true that separate administrative sanctions may be imposed and are not dependent upon a `finding of contempt for their validity (*People ex rel. Chicago Bar Association v. Sherwin* (1936), 364 Ill. 350, 4 N.E.2d 477; *People ex rel. Chicago Bar Association v. Metzen* (1919), 291 Ill. 55, 125 N.E.2d 734), administrative remedies and contempt proceedings are nevertheless entirely independent. Even assuming the potential penalties available to the administrative authority upon a determination a violation of the act has occurred are criminal in nature (see Ill. Rev. Stat. 1987, ch. 111, par. 6239), additional sanctions by means of contempt do not offend principles of double jeopardy. (See *People v. Totten* (1987), 118 Ill. 2d 124, 514 N.E.2d 959.) Because the potential remedies available here are not mutually exclusive, respondent's motion to dismiss because of the existence of alternative administrative remedies is denied.

■ Respondent's third contention, that the rule to show cause does not contain facts sufficient to demonstrate her conduct is wilful, is also without merit. It is clear that transcripts were not timely filed in each case cited in the rule to show cause and that the applicable supreme court rule regarding the filing of transcripts has been repeatedly violated. Respondent does not contend otherwise. The pattern of repeated violations demonstrated by the records of this court of which the court can take judicial notice (*Albert*, 383 Mich. 722, 179 N.W.2d 20) and which may be proved by the manner permitted by statute (Ill. Rev. Stat. 1987, ch. 110, par. 8—1202) are facts and, hence, circumstantial evidence sufficient to support the issuance of the rule to show cause. Accordingly, respondent's motion to dismiss on this basis, which we had previously taken under advisement, is now denied.

■ The final basis for respondent's written motion to dismiss the rule is that the issue is moot because all transcripts were filed on or

before the date of the preliminary hearing in this matter. We disagree. While it appears respondent did produce the transcripts for filing prior to the preliminary hearing, they were produced only after the rule to show cause was issued and were clearly not filed within the time frame set by supreme court rule or this court's specific orders. Since production was not in compliance with the original order to prepare the transcripts, the mere fact the transcripts have now been filed does not render the issue moot. (Accord *People v. Boclair* (1987), 119 Ill. 2d 368, 519 N.E.2d 437.) For this reason, respondent's motion to dismiss on the basis the issue is moot, which was previously taken under advisement, is now denied.

■ Respondent's next written motion requested a jury trial in McLean County. The basis for the request was that the potential sentence, *i.e.*, six months' imprisonment and a $500 fine, was sufficiently severe to require a trial by jury and venue was properly in McLean County because the acts or omissions ascribed to respondent occurred in McLean County.

The United States Supreme Court has clearly held that a respondent is not entitled to a jury trial if the penalty is no greater than six months' imprisonment or a $500 fine or both, the sentence for a petty offense under Federal law. (*Bloom v. Illinois* (1968), 391 U.S. 194, 20 L. Ed. 2d 522, 88 S. Ct. 1377; *Armentrout v. Dondanville* (1979), 67 Ill. App. 3d 1021, 385 N.E.2d 829; see also *People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 364 N.E.2d 50; *Blanton v. City of North Las Vegas* (1989), 489 U.S. 538, 103 L. Ed. 2d 550, 109 S. Ct. 1289.) Since respondent is not entitled to a jury trial, the issue of where such a jury trial might be held is irrelevant. Even were we to consider the venue issue on the merits, respondent is in contempt, if at all, of an order of this court, and the designated venue of the Appellate Court for the Fourth Judicial District is Springfield, Sangamon County, Illinois (107 Ill. 2d R. 22(a)). Respondent's motion for jury trial in McLean County is denied.

■ Respondent's final written motion requested that the court or someone acting on its behalf proceed to prove the case against her prior to her being required to present evidence on her own behalf. Respondent claims that directing her to proceed violates due process, denies her the presumption of innocence, and compels her to give evidence against herself. She argues that extrinsic evidence must be offered to support the charge and the rule to show cause itself is not evidence. What respondent ignores is that the records of this court have been introduced for each of the cases cited in the rule. As was stated in *In re Albert* (1970), 383 Mich. 722, 724, 179 N.W.2d 20, 22:

"A court's judicial notice of its own records is a wholly satisfactory 'other method' of establishing the failure or the fact of filing in a particular period—the gravamen of the charge here."

As the Supreme Court of Michigan also observed in that case, a court of appeals is a court of record, and if an order requiring affirmative action by a party to the appeal is a valid order in a particular case, the neglect or refusal to obey it is contempt of court.

Respondent cites no authority for the proposition the procedure employed here violates due process. Respondent has been given notice of her conduct and supplied with the records of this court which demonstrate a continuing and repeated failure to file transcripts on time. She has been admonished of her rights and the potential penalty. She has been afforded a hearing to present whatever defense she may choose. As was stated by the United States Supreme Court in *Cooke v. United States* (1925), 267 U.S. 517, 537, 69 L. Ed. 767, 774, 45 S. Ct. 390, 395:

"Due process of law, therefore, in the prosecution of contempt, except of that committed in open court, requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. We think this includes the assistance of counsel, if requested, and the right to call witnesses to give testimony, relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed."

All these things have been afforded respondent. (See *People v. Waldron* (1986), 114 Ill. 2d 295, 500 N.E.2d 17.) Accordingly, respondent's motion to require the court to proceed by presenting evidence is denied.

Respondent presented two other oral motions during the course of the hearing on this matter. The first was a motion for leave to change the proceedings from criminal to civil contempt on the theory the rule was issued to coerce respondent's production of the transcripts rather than to punish for an offense to the dignity of the court. This motion, together with respondent's second oral motion, for a directed verdict at the close of respondent's presentation of evidence, was taken under advisement. The motions are denied.

The respondent admits the show cause rule covers all cases in the appellate court during this period of time in which she had responsibility as court reporter except a case by the name of *Bush*. (*In re Marriage of Bush*, 4th Dist. Gen. No. 4—88—0716.) The respondent testified the *Childs* and *Wheeler* transcripts were filed on time. (*Peo-*

ple v. Childs, 4th Dist. Gen. No. 4—89—0424; People v. Wheeler, 4th Dist. Gen. No. 4—89—0094.) She also asserts the transcript in Frabotta was timely filed. (People v. Frabotta, 4th Dist. Gen. No. 4—89—0094.) In Frabotta, the transcript was originally due on March 16, 1989, two extensions were granted, with a final due date of July 28, 1989. The transcript was filed on June 29, 1989. In Wheeler, the transcript was due per the docketing order on June 15, 1989, and was filed July 24, 1989. In Childs, the transcript was due per the docketing order on July 11, 1989, and was filed July 13, 1989.

The procedures of the Fourth District Appellate Court permit a court reporter to file a request for extension of time to provide the transcript on a form provided by the Clerk of this Court, without the necessity of the reporter contacting the attorney representing the party responsible for the transcript in the record. Although none of the transcripts were filed within the first docketing order due date, some of the transcripts were filed within the term of the extension granted.

As to Myers and Janecek (People v. Myers (1989), 181 Ill. App. 3d 769, 537 N.E.2d 1089; People v. Janecek (1989), 185 Ill. App. 3d 89, 540 N.E.2d 1139), respondent testified she did not file a request for extension because she would use the additional 14 days allowed the circuit court clerk to prepare the record and "I could see that I was going to have it on file in two or three days, and I just put it on file." To accept the respondent's rationale for not complying with the supreme court rule, which we do not accept, the clerk's record was to be filed in Myers, November 25, 1988, 14 days after respondent's report of proceedings was due. The Myers transcript was not filed until December 12, 1988. In Janecek, respondent's report of proceedings due November 16, 1988, was not filed until December 21, 1988, some 21 days after clerk's record was due.

In People v. Stampley, 4th Dist. Gen. Nos. 4—89—0183, 4—89—0184, the due date per the docketing order was April 19, 1989, no extensions granted, the time for filing the transcript expired, the transcript was filed on June 16, 1989, as admitted by the respondent. Although the respondent was well aware that a request for extension could have been filed, none was filed by the respondent, and the actions of the respondent in Stampley are wilful. Likewise in People v. Clark, 4th Dist. Gen. No. 4—89—0216, transcript due date of April 27, 1989, no request for extension, testimony of the respondent indicates that the transcript was filed on July 24, 1989, almost three months after the original due date of the transcript.

In People v. Skelton, 4th Dist. Gen. No. 4—89—0273, an extension

was granted, the deadline not met, and the rules of this court ignored. *Wheeler*, likewise, shows a failure to meet the docketing order due date.

As shown by the evidence in this proceeding, the respondent ignored the supreme court rules. The respondent became current in her work only after the order to show cause was entered by this court.

In summary as to wilful criminal contempt:

(1) Supreme Court Rule 323 (107 Ill. 2d R. 323) sets forth the timetable for due dates to be followed by court reporters in preparing and filing transcripts.

(2) The respondent had responsibility for 16 transcripts in the Fourth District Appellate Court during the period October 1988 to July 1989.

(3) The Fourth District Appellate Court entered docketing orders with transcript due dates in the 15 cases cited in the rule to show cause. A formal request for transcript was made in the Industrial Commission case.

(4) Respondent failed to meet the original docketing order due dates in all of these cases on appeal wherein she had responsibility as court reporter.

(5) Respondent was aware of her responsibility per Supreme Court Rule 323 and was cognizant of the procedures permitting court reporters to request extensions in the Fourth District Appellate Court. She does not show cause for her repetitive wilful violation of rules and procedures.

(6) In *Myers, Janecek, Stampley, Clark, Skelton,* and *Wheeler,* the violations of the Supreme Court Rule 323, the docketing orders of this court, and the procedures of this court were wilful criminal contempt. Of the 15 cited cases, respondent testified that only *Frabotta,* which involved two granted extensions, was timely filed.

In determining the penalty to be imposed against the respondent, evidence in mitigation was presented. The Chief Judge of the Eleventh Circuit and her immediate supervising judge testified to her years of loyal service to the court and presented a positive evaluation of her overall performance. The evidence also indicated a heavy workload. Testimony and exhibits were admitted concerning communications between the Chief Judge of the Eleventh Circuit and the Presiding Judge of the Fourth District Appellate Court. Although the correspondence indicates concern of Mrs. Peasley, neither she nor the Chief Judge provided any procedure to resolve the continued violations by her. The Chief Judge and supervising judge have some management responsibility for the delays. However, the responsibility to

comply with the supreme court rules and the orders of this court is the respondent's. During the period of time of this rule, her conduct in failing to comply was wilful. For reasons known only to herself, no steps were taken to remedy the repetitive violation of the rule and orders. Only after the rule to show cause was entered did the respondent become current.

The respondent introduced a statement by the Clerk of this Court that extensions are routinely granted. This is hardly an excuse for her conduct. Nor should this court's leniency in considering reporters' requests be deemed automatic. The supreme court rules and orders of this court are to be conscientiously and strictly followed.

The respondent, by motion, suggests discharge of the rule in favor of administrative procedures pursuant to the Reporters Act (Ill. Rev. Stat. 1987, ch. 111, par. 6201 *et seq.*). Although respondent's motion is denied, the disposition made here is found to be adequate in view of Mrs. Peasley's long service with the court.

The respondent Linda Peasley, as stated heretofore, is found in wilful criminal contempt of this court, is sentenced to a fine of $100 and ordered to pay the costs of service of the rule by the sheriff of McLean County, Illinois, in the amount of $15 and the court reporters' costs in the amount of $431.75, fine and costs to be paid within 60 days.

The action taken by this court today may be considered drastic and unfair by the respondent, but is absolutely necessary to the protection of defendants' rights to timely disposition of appeals.

The clerk is directed to send a copy of this opinion to respondent's attorney *instanter* and file certificate of mailing.

Ordered entered.

KNECHT and SPITZ, JJ., concur.