# IN RE CAROLYN BURKE

S. Ct. Civ. No. 2008-093

Supreme Court of the Virgin Islands

December 31, 2008

346

H. HANNIBAL O'BRYAN, ESQ., Territorial Public Defender, St. Croix, USVI, *Attorney for Carolyn Burke*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(December 31, 2008)

PER CURIAM. This matter comes before this Court due to the failure of Carolyn Burke (hereafter "Burke"), Official Court Reporter, to timely file transcripts in five appeals currently pending before this Court. For the following reasons, we find Burke in contempt of Court and impose monetary sanctions.

## I. BACKGROUND

Burke, an Official Court Reporter, was responsible for filing transcripts of Superior Court proceedings in five matters that have been appealed to this Court.

In *Petroleum Holdings-Two Bros., Inc. and Petroleum Holdings-Peters Rest, Inc. v. Theodore Cohen* (hereafter *"Petroleum Holdings"*), Civ. No. 2007-123, this Court denied without prejudice Burke's request for an extension of time to July 20, 2008, to file the transcript. This Court also required that Burke file with the Court Part II — Court Reporter Acknowledgement of Transcript Purchase Order ("TPO") within ten days. On June 25, 2008, having not received Part II of the TPO or the transcript, this Court ordered Burke to show cause, in writing, within ten days, why she should not be held in contempt and to file the transcript with this Court within ten days. Burke failed to respond to the show cause order, and did not file the transcript or Part II of the TPO with this Court within ten days as directed.

In *Albert Marcelle, Jr., v. Gov't of the Virgin Islands* (hereafter *"Marcelle, Jr."*), Crim No. 2007-128, this Court denied Burke's request for an extension of time to June 20, 2008, and ordered her to file with the Court Part II of the TPO. Having not received Part II of the TPO or the transcript as of June 25, 2008, this Court again issued an Order requiring Burke to show cause why she should not be held in contempt of Court and again ordering her to file the transcript within ten days. A month later, on July 23, 2008, the Court finally received Part II of the TPO. However, Burke failed to specify the date on which she expected to have the transcript completed. *See* V.I. S. CT. R. 11(b) (requiring the court reporter to transmit Part II of the TPO to the Court with an estimation of the number of pages being transcribed and the date on which the transcript will be completed). Despite acknowledging that she received the TPO on January 9, 2008, this Court did not receive Part III of the TPO, which serves as notification that the transcript was filed with the Superior Court, until September 22, 2008. To date, Burke has failed to respond to the show cause order.

On September 23, 2008, this Court issued an order requiring Burke to appear at its next session of oral arguments on October 24, 2008, to address the *Petroleum Holdings and Marcelle Jr.* matters and explain why she should not have sanctions imposed for her contempt. On October 8, 2008, Burke finally submitted the *Petroleum Holdings* transcript.

In *People of the Virgin Islands v. Clemento Monsanto* (hereafter "Monsanto"), Civ. No. 2007-129, it appeared that the Appellant submitted Part I of the TPO on January 8, 2008. However, the Court never received notification that the transcript was actually filed with the Superior Court, nor received Part II or Part III of the TPO from Burke. In an October 6, 2008 order, this Court ordered Burke to file, within 10 days, the *Monsanto* transcript, as well as show cause, in writing, why she should not be held in contempt of Court. The Court also ordered Burke to appear at its next session of oral arguments on October 24, 2008, to address this matter and explain why she should not be sanctioned for her apparent contempt. Burke did not respond to the show cause order and did not file the transcript until October 29, 2008.

In *Jared Bernhardt v. Margaret Bernhardt* (hereafter *"Bernhardt"*), Civ. No. 2007-132, Appellant's counsel hand delivered Part I of the TPO to the Superior Court on December 6, 2007. Although Appellant's counsel attempted to contact Burke repeatedly between December 2007 and May 2008, Burke could never be reached. In May 2008, Burke finally informed counsel's office that she had not received the December 6, 2007 TPO.

On May 29, 2008, Appellant's counsel sent Burke a second TPO. In July 2008, Burke filled out her portion of the form, but indicated that arrangements for payment had not been made. Appellant's counsel states that she attempted to contact Burke several times to obtain the information necessary to tender payment, but has not been able to reach Burke. Appellant's counsel informed the Court, in a September 12, 2008 letter, that because of the delays in obtaining the transcript, her client "remains ousted from his home with very limited access to his children."

In an October 3, 2008 order, this Court ordered Burke to file the *Bernhardt* transcript within ten days, as well as to show cause, in writing, as to why she should not be held in contempt for failure to timely transmit the transcript to this Court. This Court also ordered Burke to appear at its next session of oral arguments on October 24, 2008, to address this matter and explain why she should not be sanctioned for her apparent contempt. Burke filed the *Bernhardt* transcript in Superior Court on October 21, 2008, but did not respond to the show cause order.

In *Dwayne Tobal v. People of the Virgin Islands* (hereafter *"Tobal"*), Crim No. 2008-070, this Court granted, in a September 8, 2008 Order, the Appellant's motion for expedited appeal, and accordingly ordered Burke to file the transcript on or before September 18, 2008. However, Burke did

not file the *Tobal* transcript until September 26, 2008, or eight days late. On September 29, 2008, as a result of Burke's unexplained failure to timely comply with the September 8, 2008 Order, this Court issued a new briefing schedule that, by necessity, resulted in both parties having less time to prepare their appellate briefs. In this September 29, 2008 Order, this Court also ordered Burke to, within ten days, show cause, in writing, as to why she should not be held in contempt of Court for failure to comply with the September 8, 2008 Order. However, this Court never received a response from Burke. Accordingly, in an October 17, 2008 Order, this Court ordered Burke to appear at its next session of oral arguments on October 24, 2008, to address this matter and explain why she should not be sanctioned for her apparent contempt.

On October 24, 2008, Burke, represented by counsel, appeared before this Court to explain her repeated failure to submit transcripts on time and to comply with this Court's orders. At this hearing, Burke's counsel explained that Burke had difficulty submitting her transcripts in a timely fashion due to persistent back problems. Burke's counsel stated that Burke had requested special accommodations from the Superior Court to accommodate these problems, but was told that such accommodations would not be possible. Burke's counsel also informed the Court that she had experienced a death in her immediate family in the past year that made it increasingly difficult for her to prepare transcripts. Finally, Burke's counsel attributed Burke's failure to respond to this Court's show cause orders to a "paralysis of fear."

At the conclusion of the October 24, 2008 hearing, we invited Burke to, within ten days, meet with her supervisor and inform this Court of a recommended course of action for ensuring that the problems encountered do not re-occur. We have not received such an update from Burke.

## II. JURISDICTION

"Every court of the Virgin Islands shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other as . . . disobedience or resistance to its lawful writ, process, order, rule, decree, or command." 14 V.I.C. § 581. *See also* 4 V.I.C. § 281 ("Every judicial officer shall have power . . . to compel obedience to his lawful orders."); 4 V.I.C. § 282 ("For the effectual exercise of the powers conferred in [4 V.I.C. § 281] a judicial officer may punish for contempt in

the cases and in the manner provided by law."). Furthermore, an appellate court "has inherent power to impose sanctions in order to control its docket and promote judicial efficiency." *Matter of Bjella*, 806 F.2d 211, 215 (10th Cir. 1986). Accordingly, this Court has both statutory and inherent authority to hold Burke in contempt for her failure to comply with this Court's rules and orders.[1]

## III. DISCUSSION

At the outset, this Court wishes to recognize the high volume and demanding nature of the work handled by the Superior Court's official court reporters. This Court has considered these factors when evaluating requests for extensions of time, and has exercised its discretion in not sanctioning court reporters — including Burke — for relatively simple failures to perform their duties. *See, e.g., Edwardo Carmona, Jr. v. People of the Virgin Islands*, S. Ct. Crim. No. 2008-044 (V.I. Sept. 10, 2008) (granting court reporter's request for extension of time to file transcript); *Novelle Watts, Jr. v. Two Plus Two, Inc. and Wayne Bell*, S. Ct. Civ. No. 2007-127 (V.I. June 24, 2008) (vacating show cause order for failure to file transcript after transcript was filed, albeit untimely); *Martin v. Martin*, S. Ct. Civ. No. 2007-117 (V.I. May 13, 2008) (granting Burke extension of time to complete transcript); *Martin v. Martin*, S. Ct. Civ. No. 2007-117 (V.I. Aug. 8, 2008) (accepting transcript filed 31 days late by Burke, but warning that "such dilatory tactics are not appreciated by this Court.").

Burke's actions, however, go far beyond a simple failure to perform her duties. As we shall explain below, Burke's "failure to meet a long series of deadlines set for her" has resulted in "severe prejudice to both the parties and the court" that requires a finding of contempt and imposition of appropriate sanctions. *Matter of Holloway*, 884 F.2d 476, 477 (9th Cir. 1989).

---

[1] Although Burke files her transcripts with the Superior Court rather than with this Court, this fact is immaterial to the jurisdictional analysis because a timely notice of appeal divests the Superior Court of jurisdiction and it is the rules and orders of this Court, not the Superior Court, that have been violated. *See Matter of Peasley*, 189 Ill. App. 3d 865, 545 N.E.2d 792, 795, 137 Ill. Dec. 139 (Ill. App. Ct. 1989) (holding that appellate court may hold court reporter in contempt even though court reporter files her transcripts with the trial court).

## A. Burke's Explanations are Insufficient to Withhold a Finding of Contempt

Pursuant to this Court's Rules of Appellate Procedure, a court reporter has ninety days to file a transcript after receipt of order. *See* V.I. S. CT. R. 11(b). Furthermore, Supreme Court Rule 11 (b) allows a court reporter to file a request for an extension of time with the Clerk of the Supreme Court if she believes that she cannot complete a transcript order within this ninety day period.

■ "A party may be held in civil contempt for failure to comply with a court order if '(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.' " *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)). "It need not be established that the violation was willful." *Id.* Here, Burke does not contend that this Court's rules and orders were ambiguous, nor does she dispute that she did not comply with them. Rather, Burke seeks to excuse her actions based on personal circumstances that purportedly made it difficult for her to timely file transcripts and on a "paralysis of fear" that prevented her from responding to our show cause orders. We find that neither explanation is sufficient to withhold a finding of contempt.

■ Burke has attributed her failure to submit transcripts in a timely manner to back problems and a death in her family. However, these factors, while they may serve to mitigate the punishment ultimately imposed, are not sufficient to excuse Burke for being held in contempt. Other courts, when faced with the same issue of whether to sanction a court reporter for failure to timely submit transcripts, have universally declined to withhold a contempt finding due to the existence of similar circumstances. *See, e.g., People v. McGlotten*, 134 P.3d 487, 487 (Colo. Ct. App. 2005) (diagnosed with cancer); *Hamilton v. Jones*, 351 Ark. 561, 95 S.W.3d 809, 809 (2003) (too ill to work and taking care of two disabled children); *Ross v. State*, 346 Ark. 180, 55 S.W.3d 770, 773 (2001) (alcoholism); *Poyner v. Arkansas Contractors Licensing Bd.*, 336 Ark. 83, 985 S.W.2d 298, 298 (1999) (separation from husband); *In re Lewallen*, 675 S.W.2d 2, 2 (Ky. 1984) (giving birth to a child and going on maternity

leave); *Parrish v. Johnson*, 599 S.W.2d 361, 361 (Tex. Civ. App. 1980) (infirmity).

■ As the Colorado Court of Appeals explained, "court reporters are considered officers of the court," and thus are subject to a heightened duty because "their failures are attributable to the state." *McGlotten*, 134 P.3d at 491 (citing *Cameron v. LeFevre*, 887 F. Supp. 425, 432 (E.D.N.Y. 1995)). Because a court reporter's actions are imputed to the state, some courts have found that a court reporter's dilatory conduct constitutes a due process violation in a criminal case. *See Rheuark v. Shaw*, 628 F.2d 297, 302 (5th Cir. 1980) (holding that a two year delay from filing of notice of appeal to preparation of statement of facts caused by court reporter's dilatory conduct violates due process); *Tramel v. State of Idaho*, 459 F.2d 57, 57 (10th Cir. 1972) (holding that "inordinate and inexcusable delay in state court process may itself become a denial of due process."). *See also McGlotten*, 134 P.3d at 489 (noting that court reporter's failure to timely submit transcripts in several criminal appeals resulted in multiple defendants filing motions to vacate their convictions). Accordingly, contempt sanctions against a reporter who fails to timely file a transcript are appropriate in order "to discharge the state's responsibility to provide due process." *Id.* at 491.

■ Furthermore, this Court is not convinced that Burke's back problems and the death in her family rendered her unable to timely file the transcripts in these cases. Other courts have found that the continuation of employment as a court reporter negates a defense that medical issues or problems in one's personal life prevented a court reporter from discharging her duties. For instance, the *McGlotten* court rejected a court reporter's contention that her affliction with cancer prevented her from assisting in the preparation of the unfiled transcripts because she was still able to perform her full-time job as a court reporter in federal court, and thus her cancer diagnosis clearly did not interfere with her ability to prepare the requested transcripts. *Id.* at 492. In the instant case, throughout the relevant period Burke has continued her employment as an official court reporter in the Superior Court, and nothing indicates that Burke's back problems or the death of her relative have interfered with her job. Accordingly, these difficulties do not excuse Burke's failure to submit the instant transcripts on time.

■ Finally, we note that even if these difficulties did impact Burke's ability to file transcripts in a timely manner, the proper course of action

would have been for Burke to explain these circumstances in a request for extension of time. *See* V.I. S. CT. R. 11(b).[2] In addition, neither Burke's back problems nor the death of a family member almost a year ago could have reasonably affected Burke's ability to respond to this Court's multiple show cause orders requesting an explanation for Burke's failure to timely file transcripts. Though Burke's counsel has argued that a "paralysis of fear" prevented Burke from responding to this Court's orders, this Court considers this defense without merit because fear of the potential action a court may take does not justify ignoring a lawful court order. Therefore, this Court finds Burke in civil contempt for her failure to timely submit transcripts and to respond to this Court's orders.

## B. Monetary Sanctions are the Appropriate Punishment for Burke's Contempt

■ Most courts, when holding a court reporter in contempt, have imposed a sanction that includes a fine,[3] a period of incarceration,[4] or a

---

[2] Although Burke initially requested extensions in *Petroleum Holdings* and *Marcelle Jr.*, these extension requests made no mention of Burke's back problems or the death in her family. No requests for extension of time were filed in *Tobal, Bernhardt, or Monsanto*.

[3] *See, e.g., Holloway*, 994 F.2d at 478; *In re Traylor*, 201 S.W.3d 146, 147 (Tex. App. 2005); *In re Stockton*, No. 1205-00242-CV, 2005 Tex. App. LEXIS 8159 at *1 (Tex. App. 2005); *In re Henderson*, 133 S.W.3d 380, 381 (Tex. App. 2004); *In re Brigmon*, No. 12-03-00357-CV, 2003 Tex. App. LEXIS 10089 at *1 (Tex. App. 2003); *In re Power*, No. 12-03-00268, 2003 Tex. App. LEXIS 9238 at *1 (Tex. App. 2003); *In re Hoppock*, 849 So. 2d 1275, 1279 (Miss. 2003); *Hamilton v. Jones*, 351 Ark. 561, 95 S.W.3d 809, 809 (2003); *Ross*, 55 S.W.3d at 773; *In re Miles*, 64 S.W.3d 445, 448 (Tex. App. 2001); *In re Miles*, 55 S.W.3d 203, 204 (Tex. App. 2001); *In re Ryan*, 993 S.W.2d 294, 298 (Tex. App. 1999); *Freeman v. State*, 621 So. 2d 472, 473 (Fla. Dist. Ct. App. 1993); *Matter of Peasley*, 189 Ill. App. 3d 865, 545 N.E.2d 792, 799 (Ill. App. Ct. 1989); *In re Conner*, 722 S.W.2d 888, 889 (Ky. 1987); *Ex parte Sanchez*, 703 S.W.2d 955, 955 (Tex. 1986); *In re Hale*, 675 S.W.2d 384, 385 (Ky. 1984); *In re Lewallen*, 675 S.W.2d 2, 2 (Ky. 1984); *Matter of Hanks*, 44 Ore. App. 521, 606 P.2d 1151, 1156 (Or. Ct. App. 1980); *Matter of Wilson*, 42 Ore. App. 515, 601 P.2d 133, 135 (Or. Ct. App. 1979).

[4] *See, e.g., United States v. Tucker*, 8 F.3d 673, 677 (9th Cir. 1993); *McGlotten*, 134 P.3d at 491; *Hatfield*, 607 N.E.2d at 386; *Colonial Times, Inc. v. Gasch*, 166 U.S. App. D.C. 184, 509 F.2d 517, 522 n. 11 (D.C. Cir. 1975); *Henderson*, 133 S.W.3d at 381; *Bautista v. State*, 160 S.W.3d 917, 919 (Tenn. Crim. App. 2004); *Selby v. Baker*, No. 225737, 2002 WL 31264745, at *5 n. 7 (Mich. Ct. App. 2002); *Poyner*, 985 S.W.2d at 299; *Miles*, 64 S.W.3d at 448; *Miles*, 55 S.W.3d at 204; *People v. Jacobs*, 286 A.D.2d 404, 729 N.Y.S.2d 189, 190 (N.Y. App. Div. 2001); *Sanchez*, 703 S.W.2d at 955; *State v. Crabtree*, 625 S.W.2d 670, 673 (Mo. Ct. App. 1981); *Hanks*, 606 P.2d at 1156; *Parrish v. Johnson*, 599 S.W.2d 361, 362 (Tex. 1980).

combination of both. Considering the mitigating factors, as well as the fact that the five transcripts at issue were submitted prior to issuance of this opinion, we do not consider Burke's imprisonment an appropriate sanction at this time. *See Matter of Wilson*, 42 Ore. App. 515, 601 P.2d 133, 135 (Or. Ct. App. 1979) ("Were the transcripts still unproduced, we would impose a period of imprisonment to ensure their production").

■■ We do find, however, that monetary sanctions are necessary. We consider Burke's conduct sufficiently egregious that some sanction must be assessed to deter such dilatory conduct in the future. Burke's actions have unacceptably prejudiced the litigants in these matters. Because of Burke's tardy filings, briefing in *Monsanto* — a habeas appeal — and *Marcelle Jr.* — a criminal case — have been delayed by almost a year. Likewise, counsel for the Appellant in *Bernhardt* alleges that her client has not been able to see his children or live in his house during the 11 month period she has been waiting to receive a 35 page transcript from Burke. Similarly, *Petroleum Holdings*, albeit a civil case, has been delayed almost a year due to Burke's actions. Finally, though not rising to the same level of harm as in the other four cases, Burke's failure to timely submit the transcript in *Tobal* — an expedited appeal pertaining to a criminal defendant's pre-trial detention — resulted in both parties receiving even fewer days to submit their appellate briefs, as well as giving this Court less time to consider those briefs prior to oral argument.[5]

Burke's actions have not only delayed the appellate process, but have wasted scarce judicial resources. As a direct result of Burke's repeated violations of this Court's rules and orders, the Justices of this Court, their law clerks, and this Court's deputy clerks have spent countless hours drafting and entering orders and revising briefing schedules in the affected matters. Furthermore, Burke's failures to respond to this Court's multiple show cause orders or provide any explanation for her failure to submit

---

[5] Although not directly relevant to the matter of Burke's contempt, we wish to remind Burke that the sanctions imposed by this Court are not the only potential negative consequences Burke may face as a result of her failure to timely submit transcripts. The United States Supreme Court has held that court reporters are not entitled to immunity when acting in their capacity as court reporters, and thus litigants aggrieved by a court reporter's failure to timely submit a transcript may maintain a civil suit against that court reporter to recover damages stemming from the delay. *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-37, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993).

transcripts in these appeals necessitated the October 24, 2008 hearing, expending even more of this Court's time and resources.

This Court, having weighed the mitigating factors against the prejudice to the parties and harm to this Court, concludes that a fine equal to the lesser of $1000.00 or fifty percent of the revenue Burke obtained or is entitled to receive from preparation of the instant five transcripts is an appropriate monetary sanction. Such sum is to be determined by the Clerk of this Court.

## IV. CONCLUSION

For the foregoing reasons, this Court holds Burke in civil contempt, and imposes a fine equal to fifty percent of the revenue Burke obtained from preparing the *Petroleum Holdings, Marcelle Jr., Monsanto, Bernhardt*, and *Tobal* transcripts as the sanction for Burke's contempt.